UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MALIBU MEDIA, LLC,                                :

                                                  :

                   Plaintiff,                     :          18 Civ. 346 (PGG) (GWG)

                                                  :

      -against-                                   :          REPORT & RECOMMENDATION

                                                  :

JOHN RIOS,                                        :

                                                  :

                   Defendant.                     :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

      Plaintiff, Malibu Media, LLC, d/b/a X-Art.com ("Malibu") brought this action against

John Rios alleging copyright infringement.  Rios has defaulted and Malibu now seeks a default

judgment against Rios under Rule 55(b)(2) of the Federal Rules of Civil Procedure.  For the

reasons stated below, Malibu should be awarded $18,400 in damages and costs.

I.  <u>PROCEDURAL BACKGROUND</u>

      On January 14, 2018, Malibu filed the initial complaint in this action alleging claims of

copyright infringement under 17 U.S.C. §§ 106, 501.  (Docket # 1).  Malibu's complaint named a

"John Doe" defendant identified only by his IP address.  <u>Id.</u> ¶ 9.  Malibu did so because it knew

only the IP address of the infringer and not his name.  <u>See id.</u> ¶¶ 9-10.  On February 26, 2018,

Malibu obtained leave to serve a third party subpoena to obtain Rios' name and address from his

internet provider.  (Docket # 15).  On July 21, 2018, Malibu filed its second amended complaint,

which named John Rios as the defendant.  <u>See</u> Second Amended Complaint ¶ 9 (Docket # 34)

("Am. Comp.").  Malibu served Rios on August 13, 2018  (Docket # 39).  Rios failed to answer

or otherwise appear.  The Clerk issued a certificate of default against Rios on October 30, 2018. (Docket # 45).

On November 19, 2018, District Judge Paul G. Gardephe ordered Rios to show cause why a default judgment should not be entered against him.  (Docket # 48).  An affidavit of service for the order to show cause was filed on January 17, 2019.  (Docket # 55).  Rios never appeared.

Judge Gardephe ordered default be entered against Rios on February 20, 2019 (Docket # 58), along with a permanent injunction (Docket # 59).  The case was thereafter referred to the undersigned for an inquest on damages (Docket # 60).

On August 27, 2020, the Court issued a scheduling order directing Malibu to file proposed findings of fact and conclusions of law.  See Scheduling Order for Damages Inquest (Docket # 61) ("Scheduling Order").  Malibu responded by filing a memorandum of law.  See Memorandum of Law in Support of Inquest on Damages, filed October 11, 2020 (Docket # 62) ("Pl. Mem.").   Rios has not responded.

II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

In light of Rios' default, Malibu's properly pleaded allegations in its second amended complaint, except those related to damages, are accepted as true.  See, e.g., City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.") (citation and internal quotation marks omitted); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor") (citation omitted).  As to damages, "[t]he district court must instead conduct

an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). This inquiry requires the district court to: (1) "determin[e] the proper rule for calculating damages on . . . a claim" and (2) "assess[] plaintiff's evidence supporting the damages to be determined under this rule." Id.

Malibu bears the burden of establishing its entitlement to the amount sought. See Trs. of Local 813 Ins. Tr. Fund v. Rogan Bros. Sanitation Inc., 2018 WL 1587058, at *5 (S.D.N.Y. Mar. 28, 2018). While a court must "take the necessary steps to establish damages with reasonable certainty[,]" Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997), a court need not hold a hearing "as long as it ensure[s] that there [is] a basis for the damages specified in a default judgment[,]" Fustok, 873 F.2d at 40. In the case of a default where the defendant has never appeared, "a court may base its determination of damages solely on the plaintiff's submissions." Id. (citing Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

Here, the Court's Scheduling Order notified the parties that the Court may conduct the inquest into damages based upon the written submissions of the parties, but that any party could seek an evidentiary hearing. See Scheduling Order ¶ 3. No party has requested an evidentiary hearing. Moreover, because Malibu's submissions provide a basis for an award of damages, no hearing is required.

A. Facts Relating to Liability

Malibu seeks damages for its copyright infringement claim against Rios. See Pl. Mem. at 2. Malibu is a limited liability company based in California. Am. Comp. ¶ 8. Rios is an individual residing in New York. Id. ¶ 9. Without Malibu's permission, Rios used BitTorrent, a

3

peer-to-peer file distribution network, id. ¶ 10, to "download[], cop[y], and distribute[] a complete copy" of twelve of Malibu's films, id. ¶ 23.  Malibu owns the copyright to each film. Id. ¶ 22.

BitTorrent allows users to share large files by breaking each "file into many small pieces. Users then exchange these small pieces among each other[.]"  Id. ¶ 12.  Each smaller piece of a file has a "unique cryptographic hash value[,]" id. ¶ 14, that acts as a "unique digital fingerprint[,]" id. ¶ 15.  Each complete file also has a "unique cryptographic hash value . . . which acts as a digital fingerprint identifying the" complete file.  Id. ¶ 16.  Once the infringer "receives all of the pieces of a digital media file, the infringer's BitTorrent client software reassembles the pieces so that the file may be opened and utilized."  Id. ¶ 13.

Malibu's investigator downloaded digital media files from Rios' IP address that matched twelve copyrighted films owned by Malibu as identified by the file hash value.  See Am. Comp. ¶¶ 18-19; File Hashes, annexed as Exhibit A to Am. Comp.  "A full copy of each digital media file was [then] downloaded from the BitTorrent file distribution network[.]"  Am. Comp. ¶ 20. From this, it was confirmed "that the file hash correlating to each file matched what" was downloaded from Rios' IP address.  Id.  Malibu was therefore able to determine Rios had downloaded, copied, and distributed these twelve films without its permission, id. ¶ 24, and did so willfully, see id. ¶ 33.  The films were never "uploaded to any other BitTorrent user."  Id. ¶ 20.

To establish a claim of copyright infringement, Malibu "must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work."  Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) and Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132,

137 (2d Cir. 1998)).  Malibu has proven ownership of a valid copyright by providing the

registration number and date of registration for the twelve films at issue, see Copyrights-In-Suit,

annexed as Exhibit B to Am. Comp., and has shown unauthorized copying by alleging facts

showing Rios downloaded and distributed its copyrighted works via BitTorrent without its

permission, see Am. Comp. ¶¶ 17-24.

> B.  Damages

"[A]n infringer of copyright is liable for either" actual damages or statutory damages.  17

U.S.C. § 504(a)(1)-(2).  Here, Malibu has elected to recover statutory damages.  See Pl. Mem.

at 8.  Where a copyright owner elects to recover statutory damages, it may recover "with respect

to any one work, . . . no[] less than $750 or more than $30,000 as the court considers just."  17

U.S.C. § 504(c)(1).  "No proof of actual damages or, in fact, any damages, is necessary for the

award of statutory damages."  Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., Inc.,

291 F. Supp. 3d 554, 559 (S.D.N.Y. 2018) (citation omitted), adopted by 2019 WL 416327

(S.D.N.Y. Feb. 1, 2019).  In order to calculate statutory damages, courts in this Circuit examine:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the
> infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on
> the infringer and third parties; (5) the infringer's cooperation in providing
> evidence concerning the value of the infringing material; and (6) the conduct and
> attitude of the parties.

Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010) (citation omitted).  The

court has broad discretion in determining an appropriate award of statutory damages.  See

Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc., 807 F.2d 1110, 1116 (2d Cir. 1986);

accord Noble v. Crazetees.com, 2015 WL 5697780, at *6 (S.D.N.Y. Sept. 28, 2015) (citations

omitted).

If the court finds the "infringement was committed willfully, the court in its discretion

5

may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). In order to "prove that a copier's infringement was willful [a copyright holder] must show that the infringer 'had knowledge that its conduct represented infringement or . . . recklessly disregarded the possibility.'" Bryant, 603 F.3d at 143 (quoting Twin Peaks Prods., Inc. v. Publ'ns Int'l Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993)). "Courts frequently infer willfulness where a defendant defaults." Hounddog Prods., L.L.C. v. Empire Film Group, Inc., 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011) (citations omitted).

Malibu seeks $18,000 in statutory damages, or $1,500 per infringed work. See Pl. Mem. at 11. The Court turns next to the Bryant factors.

As to the first Bryant factor, Rios' state of mind, Rios is deemed to be willful due to his default. See Experience Hendrix, L.L.C. v. Pitsicalis, 2020 WL 3564485, at *11 (S.D.N.Y. July 1, 2020) ("With respect to the first factor, by virtue of their default, [defendants] are deemed to be willful infringers.") (citation and quotation marks omitted), adopted by 2020 WL 4261818 (S.D.N.Y. July 24, 2020); Malibu Media, LLC v. Greenwood, 2019 WL 7580083, at *4 (S.D.N.Y. Dec. 17, 2019) ("the Court may . . . find that [defendant's] conduct was willful by virtue of [defendant's] default") (citation and quotation marks omitted), adopted by 2020 WL 209140 (S.D.N.Y. Jan. 14, 2020). The first factor therefore weighs in favor of an increased statutory damages award.

Factors two and three also weigh in favor of an increased statutory damages award. Malibu's films are normally only viewable where the individual has paid a subscription fee. See Declaration of Colette Pelissier in Support of Motion for Leave to Serve a Third Party Subpoena ¶ 7, annexed as Exhibit D to Pl. Mem. Rios evaded paying this subscription fee and therefore diminished the revenue available to Malibu. Malibu's primary source of revenue is subscription

6

sales.  See id. ¶ 8.  Malibu lost money not only from Rios' unauthorized viewing of its work but also from any other BitTorrent user who downloaded the films, which Rios made available on the BitTorrent platform.  See Am. Comp. ¶ 23 ("Defendant downloaded, copied, and distributed a complete copy of Plaintiff's works").

As to the fourth factor, relating to deterrence, Malibu argues that an "award at the higher end of the permitted range[,] . . . given the evident ease with which intellectual property can be absconded with and copied, will have a substantial deterrent effect on Defendant and others[,]" that it would send a message "copying without permission will be neither tolerated nor rewarded[,]" and that it would comply "with the public policy Congress espoused in the Copyright Act by granting the Court discretion to award large and punitive statutory damages in appropriate cases[.]"  Pl. Mem. at 10.  While asserting that it seeks an award at the "higher end" of the permitted range, it in fact seeks an amount ($1,500) near the low end of the range.  See 17 U.S.C. § 504(c)(1).  Nonetheless, the Court finds that even this modest award will have a deterrent effect on Rios and other infringers.  See Malibu Media, LLC v. Doe, 2020 WL 6530913, at *3 (S.D.N.Y. Mar. 26, 2020) ("there is a deterrent effect on Defendant and third parties where a modest penalty is enforced against infringement"), adopted by 2020 WL 5057350 (S.D.N.Y. Aug. 27, 2020).

As for the fifth factor, Rios has obviously not cooperated in providing evidence concerning the value of the infringing material given his default.

Finally, the Court has no information as to either party's conduct that would bear on the amount of statutory damages.

Having weighed the Bryant factors, the Court concludes that Malibu has justified the modest amount it has requested, that is, $1,500 per infringed work or a total of $18,000 in

statutory damages.  Indeed, some courts have awarded higher amounts on similar facts.  Warner Bros. Ent., Inc. v. Carsagno, 2007 WL 1655666, at *4 (E.D.N.Y. June 4, 2007) ($6000 awarded in statutory damages for one film).  Accordingly, Malibu should be awarded $18,000 in statutory damages.

       C.  Attorney's Fees and Costs

A court may, "in its discretion[,] . . . allow the recovery of full costs[,]" and "award a reasonable attorney's fee to the prevailing party as part of the costs" for copyright infringement. 17 U.S.C. § 505.  Malibu does not seek attorney's fees but does seek $615 in costs, see Pl. Mem. at 13-14, including $400 for a filing fee, $100 for an ISP fee, and $115 for process server fees, see Declaration of Kevin T. Conway in Support of Default Judgment ¶ 11, filed January 23, 2019 (Docket # 57).  Other than an attorney declaration stating these costs, see id., Malibu fails to provide any documentation supporting its claim to these costs.

Courts in this district regularly decline to award costs where not supported by documentary evidence.  See Doe, 2020 WL 6530913, at *4 (finding plaintiff's "statement of damages that included a breakdown of supposed costs" to be insufficient absent documentation of the costs); Sanchez v. Jyp Foods Inc., 2018 WL 4502008, at *17 (S.D.N.Y. Sept. 20, 2018) (declining to award full costs where plaintiff failed to submit supporting documentation).  The Court therefore should not award Malibu the $100 ISP fee, or the $115 process server fees. However, the Court may take judicial notice of the $400 filing fee.  Accordingly, Malibu should be awarded the $400 filing fee in costs.

D. Post-Judgment Interest

Malibu requests post-judgment interest. Pl. Mem. at 14.[1] The Court must allow interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); accord Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015). Accordingly, Malibu should be awarded post-judgment interest as required by statute.

III. CONCLUSION

For the foregoing reasons, Malibu should be awarded a judgment against Rios in the amount of $18,400 plus post-judgment interest as permitted by 28 U.S.C. § 1961(a).

The Clerk is requested to mail a copy of this Report and Recommendation to: John Rios, 221 East 50 Street, Apt. 5C, New York, NY 10022.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to Judge Gardephe. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir.

---

[1] While the conclusion of Malibu's memorandum of law states that Malibu is seeking "pre and post-judgment interest," Pl. Mem. at 14, its memorandum in fact addresses only post-judgment interest. We thus do not reach the issue of Malibu's entitlement to pre-judgment interest.

9

2010).

Dated: February 23, 2021
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Clerk to mail copy to:

John Rios
221 East 50 Street, Apt. 5C
New York, NY 10022